UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HAROLD WILLIAM GUTCH, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 05-2338 (RMU) |
| | : | |
| v. | : | Document Nos.:   5, 7 |
| | : | |
| FEDERAL REPUBLIC OF GERMANY, | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OPINION

Granting the Defendant's Motion to Dismiss and Denying the
Plaintiff's Motion for Leave to Perfect Service of Process

I.   INTRODUCTION

The *pro se* plaintiff, a dual U.S. and German citizen, brings suit challenging tax assessments levied by the defendant against the plaintiff's deceased father. The plaintiff claims that his father was immune from German taxation as a member of the Allied Forces of Berlin from 1957 to 1989. Before the court are the defendant's motion to dismiss and the plaintiff's motion for leave to perfect service of process.[1] Because the court lacks subject-matter jurisdiction over the plaintiff's claims, the court grants the defendant's motion to dismiss. Consequently, because granting the plaintiff leave to perfect service would be futile, the court denies the plaintiff's motion to perfect service of process.

---

[1] The plaintiff also moves for a court-appointed counsel. Pl.'s Mot. to Am./Correct and to Appoint Counsel. Because the court dismisses the plaintiff's complaint for lack of jurisdiction, it denies the plaintiff's motion for counsel as moot.

## II.    BACKGROUND

### A.    Factual History

The plaintiff's father, Dr. Samuel L. Kobre, began practicing law in Berlin in 1950. Compl. ¶ 95.  In 1951, during the Allied Forces occupation of Germany, Kobre became a member of the Allied Forces of Berlin.  *Id.* ¶¶ 95-98.  As a member of the Allied Forces, according to the plaintiff, Kobre was immune from taxation in Germany.  *Id.* ¶ 98.  Between 1955 and 1957, however, Kobre received three letters informing him that his status as a member of the Allied Forces had terminated.  *Id.* ¶ 115.  But the plaintiff alleges that the letters Kobre received were insufficient to end his special status and terminate his immunity from the defendant's jurisdiction.  *Id.* ¶¶ 115-23.  Moreover, the plaintiff maintains that Kobre's status as a member of the Allied Forces did not automatically terminate in 1955 when the occupation of West Germany ended, *id.*, and that Kobre continued to enjoy immunity from German jurisdiction and taxation, *id*. ¶ 133.

The plaintiff alleges that German authorities tried Kobre in a German criminal court for tax evasion for the period from 1957 to 1987, and the court concluded that because his status as a member of the Allied Forces had ended, he was not immune from taxation or jurisdiction in German courts.  *Id.* ¶¶ 124-29.  The court allegedly found Kobre guilty of tax evasion on February 23, 1989.  *Id.* ¶ 129, p. 107.[2]  In 1987, German revenue authorities filed a parallel civil suit concerning the tax assessments from 1957 to 1987, and in 1989, they initiated another suit

---

[2] The complaint has two paragraphs numbered 128 and two paragraphs numbered 129, so the court will identify these paragraphs with a page number in addition to a paragraph number.

involving assessments for the years 1988 through 1989. *Id.* ¶ 128, p. 108. Kobre died before the case was resolved, and the assessments passed to the plaintiff as inheritance debt. *Id.*

The plaintiff brought a civil suit to challenge the tax assessments. *Id*. ¶ 129, p.108. The civil court also ruled against the plaintiff, concluding that Kobre's special status ended in 1955. *Id.* ¶¶ 130-134, p. 109-115. The German Federal Fiscal Court, the appellate court in Germany, dismissed the plaintiff's subsequent appeal in 1994 as unfounded, and the German Constitutional Court, the court of last resort, elected not to hear the case in 1996. *Id.* ¶¶ 141, 143. In 1999, the European Commission on Human Rights rejected the plaintiff's appeal. *Id.* ¶ 143.

### B.   Procedural History

On December 7, 2005, the plaintiff brought this action, claiming that his debt to the defendant is invalid because his father was a member of the Allied Forces of Berlin from 1951 until his death, and he was consequently immune from German jurisdiction and taxation. *See* Compl. He asserts that the court has jurisdiction over this case based on the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330 *et seq.*, the Alien Tort Claims Act ("ATCA"), 28 U.S.C. §§ 1350 *et seq.*, and federal question jurisdiction, 28 U.S.C. § 1331. *Id.* ¶ 4.

On December 7, 2005, the plaintiff attempted to serve the defendant by mailing the complaint and summons to the Embassy of the Federal Republic of Germany in Washington, D.C. Def.'s Mot. at 1; Not. of Mailing of Compl. at 2. On January 3, 2006, the defendant moved the court to dismiss the plaintiff's complaint for lack of proper service of process and for lack of personal jurisdiction. The plaintiff opposes the defendant's motion to dismiss and moves for leave to perfect service. The court first turns to the defendant's motion.

### III.  ANALYSIS

#### A.  The Court Grants the Defendant's Motion to Dismiss

The defendant moves the court to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and because service was improper.  Def.'s Mot. at 4.  The plaintiff responds to the motion by asking the court for leave to perfect service.  Pl.'s Mot. at 4.  In order to establish personal jurisdiction under the FSIA, a plaintiff must demonstrate subject-matter jurisdiction and proper service of process.  *Transaero, Inc., v. LaFuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994) (citing *Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981)).  Because the court lacks subject-matter jurisdiction over the plaintiff's claims, it dismisses the complaint for lack of personal jurisdiction, and it denies the plaintiff's motion to perfect service.

##### 1.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of

establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *vacated on other grounds*, 542 U.S. 155 (2004).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### 2. Legal Standard for the Foreign Sovereign Immunities Act

The Foreign Sovereign Immunities Act is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). The basic premise of the FSIA is that foreign sovereigns are immune from suit in the United States unless the action falls under one of the specific exceptions enumerated in the statute. 28 U.S.C. § 1604; *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 196 (D.C. Cir. 2004). If a foreign sovereign is not immune, the federal district courts have

exclusive jurisdiction over the action. 28 U.S.C. §§ 1330, 1604; *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38, 42 (D.D.C. 2000) (citing *Amerada Hess*, 488 U.S. at 434-35).

Under the FSIA, a foreign sovereign has "immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)). The special circumstances of a foreign sovereign require the court to engage in more than the usual pretrial factual and legal determinations. *Foremost-McKesson*, 905 F.2d at 449. The D.C. Circuit has noted that it is particularly important that the court "satisfy itself of its authority to hear the case" before trial. *Id*. (quoting *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179 (D.C. Cir. 1984)).

### 3. The Defendant is Entitled to Sovereign Immunity

At the outset, the court notes that the parties do not dispute that the defendant is a sovereign. Pl.'s Compl. ¶ 7 (stating that "[t]he defendant, the Federal Republic of Germany (Germany), is a foreign state" and that the FSIA governs the plaintiff's claims); Def.'s Mot. at 1 (challenging the plaintiff's service of process as failing to comply with the permissible methods of service properly "effected on a foreign sovereign"). As a result, the plaintiff bears the burden to establish that one of the FSIA exceptions applies and allows his claims to proceed. *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241-42 (2d Cir. 2002).

The plaintiff claims that the court may exercise jurisdiction over the defendant because the case falls within several exceptions to the FSIA.[3] First, the plaintiff asserts that his claims are subject to international agreements. Compl. ¶ 8. Second, he claims that the defendant waived its sovereign immunity when it surrendered to the Allied Forces at the end of World War II. *Id*. ¶ 9. Third, the plaintiff states that the expropriation exception applies. *Id*. ¶ 31. Fourth, he argues that his claims fall within the immovable property exception. *Id*. ¶ 32. Finally, he claims that the tortious activity exception permits this suit to proceed. *Id*. ¶¶ 52-55. The defendant challenges the legal sufficiency of the court's jurisdiction, and the court will, therefore, scrutinize the plaintiff's factual allegations to determine whether they, if true, bring the case within the FSIA's exceptions. *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1127 (D.C. Cir. 2004). Because the plaintiff's allegations do not fall under the exceptions

---

[3] The plaintiff also maintains that the court has jurisdiction over the defendant under the Alien Tort Claims Act ("ATCA"), 28 U.S.C. §§ 1350 *et seq*. Compl. ¶ 6. But in a suit against a foreign state, a plaintiff must establish that the court has subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ l330 *et seq.*, before a court will consider whether or not the ATCA is applicable. *Soudavar v. Islamic Republic of Iran*, 67 Fed. Appx. 618, 619-20 (D.C. Cir. 2003); s*ee also Saltany v. Reagan*, 886 F.2d 438, 440-41 (D.C. Cir. 1989). Because the court finds that the plaintiff's claims do not confer subject-matter jurisdiction under the FSIA, the court will not consider the plaintiff's ATCA claims.

The plaintiff further alleges that the court has jurisdiction under federal question jurisdiction. Compl. ¶ 6. The plaintiff misunderstands federal question jurisdiction. Federal question jurisdiction does not provide an independent cause of action. Rather, it is the principle that confers jurisdiction on federal courts to hear claims involving federal statutes. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804 (1986). A plaintiff must still bring claims pursuant to a federal statute, as the plaintiff does here. Federal question jurisdiction, therefore, is not an independent grounds for jurisdiction. Because the plaintiff has not established jurisdiction under the FSIA, his claims fail to allege a federal question conferring jurisdiction.

to the FSIA, the defendant is entitled to sovereign immunity. Accordingly, the court dismisses the plaintiff's claims.

    a.    **The Plaintiff's Claims are Not Subject to Existing International Agreements**

The plaintiff argues that Germany's sovereign immunity in this case is subject to existing international agreements. Compl. ¶ 8. The plaintiff asserts that because the courts in Germany applied the NATO Status of Forces Agreement ("NATO-SOFA") to his claims, and because the United States was a member of several international agreements during the Allied Forces occupation from 1945 until 1990, there are "international agreements governing this case."[4] *Id.*

A "foreign sovereign's immunity from suit is 'subject to existing international agreements to which the United States [was] a party at the time of the enactment of [the FSIA].'" *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1175 (1994) (quoting 28 U.S.C. § 1604). Stated differently, for the plaintiff to successfully assert the existing agreement exception, a direct conflict must exist between a preexisting international agreement and the immunity provisions of the FSIA. *Moore v. United Kingdom*, 384 F.3d 1079, 1085 (9th Cir. 2004).

---

    4    The plaintiff also attaches a photocopy listing of international agreements pertaining to the Allied occupation of Berlin. Compl. ¶¶ 11-27; Ex. 17. The plaintiff, however, bears a burden to argue the applicability of the FSIA exceptions to his claims. *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241-42 (2d Cir. 2002). Merely citing international agreements fails to meet this burden. Because the plaintiff provides no argument that a direct conflict exists between these agreements and the immunity provisions of the FSIA, the court will not analyze their applicability to the plaintiff's claims. *See Shafi v. Flowers-Hinnant*, 2006 U.S. Dist. LEXIS 41469, *6 (D.D.C. June 21, 2006) (stating that although a court ought to liberally construe a *pro se* litigant's pleadings, *pro se* litigants must comply with the Federal Rules of Civil Procedure, including meeting their burden to show that the court has jurisdiction) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987)).

The plaintiff claims that Article X of the NATO-SOFA governs his claims and waives the defendant's immunity. *Id*. ¶ 33. Indeed, "[t]he NATO-SOFA pre-dated the FSIA, and is therefore one of the 'existing international agreements' covered by the caveat in § 1604." *Moore*, 384 F.3d at 1065. For this international agreement to permit the plaintiff to proceed with his claims, however, the provision must expressly conflict with the immunity provisions of the FSIA. Article X of the NATO-SOFA provides, *inter alia*, that "[m]embers of a force or civilian component shall be exempt from taxation in the receiving State[5] . . . " NATO Status of Forces Agreement art. X, June 19, 1951, 4 U.S.T. 1792. Article X sets forth conditions under which members of the Allied Forces reside in Germany, but it makes no mention of Germany's immunity from suit. Therefore, the court fails to see how the NATO-SOFA abrogates the defendant's immunity and creates a private cause of action. *See Amerada Hess*, 488 U.S. at 442 (stating that the international agreement exception applies when "international agreements 'expressly conflic[t]' with the immunity provisions of the FSIA," to create a private cause of action) (internal citations omitted).

In the same way, the plaintiff references Allied treaties and agreements concerning the governance of Germany, and he asserts that "Allied laws in Berlin are also 'international agreements' governing the FSIA." Compl. ¶ 28. The plaintiff, however, fails to show how these agreements conflict with the immunity provisions of the FSIA and defeat the defendant's

---

[5] A "receiving state" is "the Contracting party in the territory of which the force or civilian component is located, whether it be stationed there or passing in transit." NATO Status of Forces Agreement art.1, June 19, 2005, 4 U.S.T. 1792.

immunity. Absent an express conflict between the FSIA and the agreements the plaintiff cites, the existing agreement exception is inapplicable to the plaintiff's claims. *Moore*, 384 F.3d at 1085.

### b. The Defendant has Not Waived Sovereign Immunity

Additionally, the plaintiff argues that the case falls under the waiver exception to the FSIA. The plaintiff alleges that the defendant explicitly waived sovereign immunity by unconditionally surrendering to the Allies in 1945 at the end of World War II. Compl. ¶ 9. Moreover, because the Allies controlled Berlin until 1990, the plaintiff argues that Germany's waiver of sovereignty extended until 1990. *Id.*

The FSIA states that "a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). Although a sovereign can waive its immunity either explicitly or implicitly, courts generally require a waiver of sovereignty to be explicit. *See In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 803 n.31 (S.D.N.Y. 2005) (citing *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 261 (2d Cir. 2003)). An explicit waiver of sovereign immunity "must be an intentional and knowing relinquishment of the legal right." *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 234 (5th Cir. 2004) (quoting *Good v. Aramco Services Co.*, 971 F. Supp. 254, 261 (S.D. Tex. 1997)). Moreover, "explicit waivers of immunity are narrowly construed 'in favor of the sovereign' and are not enlarged 'beyond what the language requires." *World Wide Minerals, LTD v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002) (quoting *Library of Cong. v. Shaw*, 478 U.S. 310, 318 (1986)).

The plaintiff alleges that the defendant's unconditional surrender to the Allies acted to forfeit its status as a sovereign, and, as a result, waive its sovereign immunity. Compl. ¶ 9. The plaintiff cites no case law in support of his position, and the court's own efforts to find applicable law are unavailing. In applying the FSIA the court is to assume immunity, and when ambiguity exists, it ought to find in favor of immunity. *World Wide Minerals*, 296 F.3d at 1163 (concluding that Kazakhstan was entitled to immunity where provisions of an agreement created ambiguity). Although the defendant's surrender was, indeed, unconditional, Military Surrender by Germany, May 8, 1945, 1945 U.S.T. Lexis 194 *1, the court cannot conclude that Germany's surrender "evinces a clear and unambiguous intent" to subject itself to legal proceedings. *Libra Bank, Ltd. v. Banco Nacional de Costa Rica*, 676 F.2d 47, 49 (2d Cir. 1982). Consequently, the court concludes that the plaintiff's bare allegations fail to establish that this exception applies. *Kilburn*, 376 F.3d at 1127.

When a sovereign does not expressly waive immunity, a court may nevertheless recognize an implicit waiver of immunity in certain circumstances. Courts narrowly interpret implicit waivers of sovereign immunity. *Calzadilla v. Banco Latino Int'l*, 413 F.3d 1285, 1287-88 (D.C. Cir. 2005); *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991). "[A]n implied waiver [of sovereign immunity] depends upon the . . . government's having at some point indicated its amenability to suit." *Princz*, 26 F.3d at 1174 (holding that the violation of *jus cogens* norms by defendant Germany did not constitute an implied waiver of Germany's sovereign immunity under the FSIA); s*ee also Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 377 (7th Cir. 1985) (noting that courts "rarely find that a nation has waived its sovereign immunity . . . without strong evidence that this is what the foreign state intended"). An

implicit waiver can exist in three situations: "1) when a foreign state agrees to arbitration in another country; 2) when a foreign state agrees that the laws of another country govern a contract; and 3) when a foreign state files a responsive pleading without raising the immunity defense." *Pere v. Nuovo Pignone, Inc.*, 150 F.3d 477, 482 (5th Cir. 1998) (citing H. Rep. No. 1487, 94th Cong., 2nd Sess. 18, *reprinted in* 1976, U.S.C.C.A.N. 6604, 6617). Courts are reluctant to recognize other acts as constituting an implicit waiver. *World Wide Minerals*, 296 F.3d at 1161 n.11 (quoting *Princz*, 26 F.3d at 1174).

The third example of implied waiver is the only exception at play because the plaintiff has not argued that the defendant agreed to arbitration in the United States or that U.S. law applies to a contract. The defendant has entered an appearance and filed a motion to dismiss for lack of personal jurisdiction. A motion to dismiss, however, is not a responsive pleading for the purpose of this exception. *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 277 (2d Cir. 1984) (refusing "to hold that the filing of a variety of motions, including a motion to dismiss, automatically waives the defense" of sovereign immunity). Therefore, the plaintiff cannot maintain his claims on this theory.

    c.    **The Plaintiff's Claims do Not Fall Under the Expropriation Exception**

The plaintiff claims that the taxes levied by the defendant against the plaintiff's father include assessments against his income from U.S. stocks. Compl. ¶ 31. The plaintiff further alleges that the defendant seized the entire estate of his deceased father, including bank assets, which is "property present in the United States." *Id.* ¶ 32. Section 1605(a)(3) states that a foreign state will not be immune to jurisdiction in a case:

in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]

28 U.S.C. § 1605(a)(3). This provision is known as the "expropriation exception." *Nemariam v. Fed. Democratic Republic of Ethiopia*, 400 F. Supp. 2d 76, 81 (D.D.C. 2005).

Most courts maintain that the expropriation exception applies only when the property at issue is "tangible." *Nemarium*, 400 F. Supp. at 81-82 (citing *Peterson v. Royal Kingdom of Saudi Arabia*, 332 F. Supp. 2d 189, 197 (D.D.C. 2004)). Intangible property which fails to fall within this exception includes "bank accounts, stock options, and business good-will." *Nemarium*, 400 F. Supp. at 83 (quoting Black's Law Dictionary 1233 (7th ed. 1999)). Bank accounts in the U.S. are not tangible property because "the holder [of a bank account] simply has a contractual right to receive the funds upon request, not physical possession or even control of the actual funds." *Id*. Although stocks themselves are not tangible property, the subject of a foreign government's seizure of a "controlling interest in the stock of a company" constitutes tangible property under § 1605(a)(3) because it is the equivalent to control over the assets and profits of the company. *Kalamazoo Spice Extraction Co. v. Provisional Military Gov't of Socialist Ethiopia*, 616 F. Supp. 660, 663 (W.D. Mich. 1985).[6]

First, the plaintiff alleges that the defendant wrongfully seized the plaintiff's father's bank accounts. Compl. ¶ 31. Because bank accounts are not tangible property, however, this

---

[6] The Court of Appeals for the District of Columbia Circuit has not determined the bearing of the tangible/intangible property distinction on the court's subject-matter jurisdiction. *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 88 (D.C. Cir. 2005).

exception does not apply to those claims. *Nemarium*, 400 F. Supp at 83. Second, the plaintiff argues that the defendant seized U.S. stocks. Compl. ¶ 31. In order for the plaintiff to maintain this claim, he must argue that the stocks are tangible property. The plaintiff, however, fails to make that argument. Indeed, the plaintiff does not allege either that this stock was a controlling share of a company (pursuant to *Kalamazoo Spice*) or that it otherwise constitutes tangible property. Without asserting more than the mere seizure of U.S. stock, the plaintiff fails to allege facts sufficient for the expropriation exception to apply.[7] *Peterson*, 332 F. Supp. 2d at 197 (stating that courts have held that the expropriation exception "only applies where the property at issue as 'tangible property'") (citing *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 1996 U.S. Dist. LEXIS 10430; *Lord Day and Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 560 (S.D.N.Y. 2001); *Leutwyler v. Office of Her Magesty Queen Rania al Abdullah*, 184 F. Supp. 2d 277, 289 n.13 (S.D.N.Y. 2001); *Hirsh v. State of Israel*, 962 F. Supp. 377, 383 (S.D.N.Y. 1997); *Intercontinental Dictionary Series v. De Gruyter*, 822 F. Supp. 662, 678 (C.D. Ca. 1993)).

---

[7] The court holds *pro se* litigants' pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Thomas v. Principi*, 394 F.3d 970, 974 (D.C. Cir. 2005) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), and it gives the plaintiff the benefit of all inferences reasonably drawn from the complaint, *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). Even viewing the plaintiff's allegations through that lense, however, the court cannot conclude that the plaintiff has established that the seized stocks constitute tangible property and, consequently, that the expropriation exception applies. *Shafi v. Flowers-Hinnant*, 2006 U.S. Dist. LEXIS 41469 *6 (D.D.C. June 21, 2006) (dismissing a *pro se* litigant's claims for failure to establish the court's jurisdiction and explaining that "a *pro se* litigant, like any other litigant, must comply with the Federal Rules of Civil Procedure). Accordingly, the court must conclude that it lacks jurisdiction over the plaintiff's claims.

### d.     The Plaintiff's Claims do Not Fall Under the Immovable Property Exception

The plaintiff claims that the disputed property also brings the case under § 1605(a)(4) of the FSIA.  Compl ¶ 31.  Section 1605(a)(4) of the FSIA says that a foreign state will not be immune if "rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue."  28 U.S.C. § 1605(a)(4).  "[I]mmovable property situated in the United States," however, refers to real estate located in this country.  *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 369 (2d Cir. 2006) (explaining that the language of the provision restricts its application to cases in which rights to real estate located within the United States are in issue).  The property at issue here consists of bank accounts and stocks, and the plaintiff makes no allegations regarding real estate.  Compl. ¶¶ 31-32.  Therefore, the immovable property exception does not apply, and sovereign immunity bars the plaintiff's claims.

### e.     The Plaintiff's Claims do Not Fall Under the Tortious Activity Exception

Finally, the plaintiff argues that the defendant's taking of his father's property was unlawful, and brings the case under the tortious activity exception of the FSIA.  Compl. ¶ 31.  A foreign state is generally not immune if "money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state."  28 U.S.C. § 1605(a)(5).  This exception seeks "to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law." *Amerada Hess*, 488 U.S. at 439 (citations omitted); *see also MacArthur Area Citizens Ass'n v.*

*Republic of Peru*, 809 F.2d 918, 921 (D.C. Cir. 1987) (explaining that this exception applies to allegations of tort and should be narrowly construed "not to encompass the farthest reaches of common law"). In addition, both the tortious act and the injury must occur in the United States for this exception to apply. *Frolova*, 761 F.2d at 379.

The plaintiff alleges that the defendant's seizure of his assets was, and continues to be, tortious, causing him emotional distress. Compl. ¶¶ 52-55. The basis for his claims, however, is that "property [was] taken in violation of international law." Compl. ¶ 31. Courts maintain that even when a claim sounds in tort, the tortious activity exception does not apply when the claim "is essentially a claim for an unjust taking of property." *De Sanchez v. Banco Central De Nicaragua*, 770 F.2d 1385, 1398 (5th Cir. 1985); *see also Chuidian v. Philippine Nat. Bank*, 912 F.2d 1095, 1106 (9th Cir. 1990) (explaining that allowing plaintiffs to re-characterize their property claims as tortious would enable them to wrongfully escape the requirements of § 1605(a)(3)). The plaintiff's allegations all involve the defendant wrongfully confiscating the plaintiff's assets. Consequently, the tortious activity exception does not apply.

In sum, none of the FSIA's exceptions are available to the plaintiff, and the defendant's immunity bars the plaintiff's claims. The court now turns to the plaintiff's motion to perfect service of process.

### B. The Court Denies the Plaintiff's Motion for Leave to Perfect Service

The defendant claims that the plaintiff's service does not comply with the methods of service required by the FSIA. Def.'s Mot. at 1. The plaintiff acknowledges that his attempted

16

service of process was improper according to 28 U.S.C. § 1608, and he requests leave to perfect service.  Pl.'s Mot. ¶ 5.

*Pro se* litigants are allowed greater latitude than litigants who are represented by counsel to correct improper service of process.  *See Moore v. Agency for Int'l. Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers"); *See also Hilska v. Jones*, 297 F. Supp. 2d 82, 90 (D.D.C. 2003) (granting a *pro se* plaintiff 15 months to correct improper service because of the plaintiff's *pro se* status and because the plaintiff lived overseas).  Although the court has discretion to grant the plaintiff leave to perfect service of process, Fed. R. Civ. P. 4(m), the court need not exercise its discretion when an alternative ground for dismissal exists, *Sullivan v. Potter*, 2006 WL 785289, slip op. *3 (D.D.C. Mar. 28, 2006).  Because the court lacks subject-matter jurisdiction over the plaintiff's claims, it declines to grant the plaintiff leave to perfect service.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss and denies the plaintiff's motion for leave to perfect service of process.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 27th day of July, 2006.

RICARDO M. URBINA
United States District Judge