UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HAROLD WILLIAM GUTCH

                      **Plaintiff**

v.                                                  05 cv 02338 (RMU)

FEDERAL REPUBLIC OF GERMANY

                      **Defendant**

### PLAINTIFF'S MOTION FOR RECOSIDERATION
### TO ORDER OF 27 JULY 2006 (REC. 4 AUG 06)

Plaintiff Harold William Gutch for the reasons stated in this accompanying memorandum moves this Court reconsider the Order of 27 July 2006.

Proposed Order:

1. Motion grant if necessary extension of filing time

2. Motion reconsider order of 7/27/2006

    A. Germany's Unconditional Surrender
    B. Proofs of facts
    C. U.S. Sector Commandant's certificate
    D. Defendant's Motion

Dated: August 10, 2006                    Respectfully submitted,

                                              *Harold Gutch*
                                              Harold W. Gutch
                                              Isarstrasse 66
                                              93057 Regensburg
                                              Germany

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HAROLD WILLIAM GUTCH

            **Plaintiff**

v.                                                                 05 cv 02338 (RMU)

FEDERAL REPUBLIC OF GERMANY

            **Defendant**


PLAINTIFF'S MOTION FOR RECOSIDERATION
TO ORDER OF 27 JULY 2006 (REC. 4 AUG 06)


**I. Motion to extend filing time for plaintiff's motion for reconsideration.**

If this motion should not be in due filing time plaintiff moves that this court extend filing period for the time it took. Memorandum Opinion and Order being filed on 7/27/2006 reached plaintiff only 8/4/2006, so it was impossible to file motion for reconsideration more punctually.

**II. Motion for reconsideration of Memorandum and Order of 7/27/2006.**

Plaintiff respectfully moves the court reconsider Memorandum and Order of 7/27/2006 under the following aspects:

    A.   Germany's Unconditional Surrender and Waiver of Immunity

In an unconditional surrender a sovereign state intentionally and knowingly relinquishes its sovereignty, that is it possesses it no longer and the immunity connected with this sovereignty is also gone. It is the clearest and most unambiguous waiver of immunity that is possible. Case law referred to in Memorandum Opinion of Order deals with cases where sovereignty was waived within agreement, that is the party concerned is sovereign to begin with, which leaves room for the question of ambiguity or intent concerning its waiver of sovereignty. *World Wide Minerals,*

1

296 F. 3d at 1163 deals with "an agreement creat[ing] ambiguity" (Memorandum Opinion, III, A, 3, b). Germany's unconditional surrender to the Allies was not an agreement between Germany and the Allies, but literally an unconditional surrender. The text of the unconditional surrender, the *"Declaration Regarding the Defeat of Germany and the Assumption of Supreme Authority with Respect to Germany by the Governments of the UK, the USA, the USSR and the Provisional Government of the French Republic"* [hereafter: *Decl. Defeat Germany*] is a published text (Compl. No. 15), it is not ambiguous about the fact that supreme authority was exclusively with the Allies and that Germany's sovereignty was zero:

"The governments [of the Allies] hereby assume supreme authority with respect to Germany, including all the powers possessed by the German Government, the High Command and any state, municipal, or local government or authority. … The Governments [of the Allies] will hereafter determine the boundaries of Germany or any part thereof and the status of Germany or of any area at present, being part of German territory".

It is this supreme authority in the possession of which the Allies carried through the occupation of Germany and determined "the status of any area at present, being part of Germany" (*see* quotation above) which is the reason for Germany's disappearance as a state with a central government for the next 45 years. *Libra Bank, Ltd. V. Banco Nacional de Costa Rica,* 676 F. 2d 47, 49 (2d Cir. 1982) concerns a sovereign party to begin with, therefore "intent" of its waiver plays a part. After an "absolutely and radical unconditional surrender" as the one Germany underwent, intent of the defeated [not party because of surrender] is of no concern. Whether Germany for example intended to subject itself to such legal proceedings as the Nuremberg Trials or not was never an issue. One may construe the explicit waiver of immunity when an unconditional surrender is concerned as "narrowly and as much 'in favour of the sovereign'" (Mem. Opinion, III.A.3.b. quoting *World Wide Minerals, LTD v. Republic of Kazakhstan*) as possible, as the sovereign after an unconditional surrender is the victorious power, the outcome for the side that surrendered unconditionally is still the complete loss of sovereignty.

It is this supreme authority assumed in the *Decl. Defeat Germany* that is referred to when the Allies speak of their 'rights and responsibilities concerning Berlin' in their statements until 1990,

2

part of which statements are referred to in Compl. Nos. 16-24, or when they speak of themselves as "Acting on the basis of their quadripartite rights and responsibilities, and of the corresponding wartime and post-war agreements and decisions of the Four Powers, which are not affected," (*Quadripartite Agreement of 3 Sept. 1971,* Compl. No. 23), or when the appeal court Washington, D.C. states in *Dostal et.al. v. Vance,* civil action No. 79-1964 [hereafter *Dostal*], ~~says~~ "the U.S. Force in Berlin is ...practically sole sovereign, and exercises "supreme authority", local government and institutions and courts being but its creatures." Compl. No. 59.

If a state that surrendered unconditionally ceases to exist for a while after the surrender because of its absent sovereignty, then it can not, after having been restored and given back its full sovereignty, claim retroactive sovereign immunity for the period that it did not exist. Retroactive immunity can not be claimed for something that did not exist.

Though Germany has been a sovereign state since 1990, it did not exist between 1945 and 1990 with a central government; with the defeat in 1945, the starting point was "Germany" as a "geographical conception", as was the literal wording in the protocol of the Potsdam Conference between the leaders of the Allied powers in 1945.

There were three German areas, FRG, GDR and Berlin. We are here concerned with only Berlin. In Berlin the sovereign between 1945 and 1990 was the Four Victorious Powers of World War II whose representatives exercised there on behalf of their governments all governmental functions of the City. They did so in their supreme authority, which they had assumed on 5 June 1945 in *Decl. Defeat Germany* which in its turn is based on the unconditional surrender of Germany on 8 May 1945.

I refer to Allied Kommandatura Law No.7 (Compl. No. 4) which was valid in Berlin until 1990, displaying undivided Allied power, in particular Articles 3; 4; 6;7; 9; 10 and 13, also to the

3

Allies' Berlin *Quadripartite Agreement of 3 September 1971*, Compl No. 23, demonstrating that Berlin was not a constituent part of the Federal Republic.

Annex 2
1. They [the governments of the Four Powers] declare, in the exercise of their rights and responsibilities, that the ties between the Western Sectors of Berlin and the Federal Republic of Germany will be maintained ..., taking into account that <u>these Sectors continue not to be a constituent part of the Federal Republic of Germany and not to be governed by it</u> (our emphasis).
2. The Federal President, the Federal Government, the Bundesversammlung, the Bundesrat and the Bundestag including their Committees and Fraktionen, as well as other state bodies of the Federal Republic of Germany <u>will not perform in the Western Sectors of Berlin constitutional or official acts...</u>" (our emphasis)I

Letter of the Ambassadors of the French Republic, the United Kingdom and the Unites States to the Chancellor of the Federal Republic of Germany of 3 September 1971,
   (e) The term "state bodies" in paragraph 2 of Annex II shall be interpreted to mean: the Federal President, the Federal Chancellor, the Federal Cabinet, the Federal Ministers and Ministries, and the branch offices of those Ministries, the Bundesrat and the Bundestag, and all Federal courts.

The three German areas were reunited in 1990 and only since then has Germany been again a state with full sovereignty. No retroactive sovereignty for occupied Berlin can be claimed by her, as only the Allies possessed sovereignty in occupied Berlin. That is concerning Berlin from 1945-1990 and also concerning the matter of the suit, the status of the Allied Force in Berlin, no sovereign immunity is contained within the sovereign immunity of today's Germany and need therefore not be surrendered.

To demand from reunited Germany today not to assume retroactively the sovereignty of the U.S. Power in Berlin and not to violate retroactively the provisions of the Allied Kommandatura does not impair the rights reunited Germany possessed when it acted in this case.

The statement of 1979 of the United States court of appeal, Washington D.C. in *Dostal* on the total absence of sovereignty of the "local", that is Berlin, but also East- or West German "government and institutions and courts" which the court designates "but its [U. S. Force's in

West Berlin] creatures" and on the "supreme authority" of the U.S. Force in West Berlin which the court designates as "practically "sole sovereign" in its sector, and exercise[ing] "supreme authority", Compl. No. 59, exists.

We can rely on it. Though it was made in 1979 it applies to Berlin until reunification in 1990, as only then did the Allies give up their supreme authority in Berlin. *2+4 Settlement,* Art. 7,1, Compl. No 24. As therefore we have at the outset this appeal court's opinion, German sovereign immunity need not be assumed for the time that this opinion applies to Berlin, in other words, subject-matter jurisdiction of a U.S. court is present. As mentioned, this supreme authority and "sole sovereign[ty]" of the US Force in Berlin stated by the Washington appeal court goes back to the unconditional surrender of Germany. There was no other incident in the history of Germany that endowed the Allies with this supreme authority which obviously was given as otherwise the Washington D.C. appeal court would not state it. As it removed German sovereignty with respect to Berlin until 1990 it is, as mentioned, in the technical sense an unambiguous waiver of sovereign immunity of Germany concerning Berlin from 1945-1990.

Accordingly, though Germany of today may be entitled by its present status to service as a sovereign state, it possesses no sovereign immunity concerning the subject matter of this case. It did not exist as a unity with state sovereignty during the period in question. Germany itself took subject-matter jurisdiction of the court for granted and based its motion for dismissal only on the consequences of improper service.

### B. Proofs of Facts

1. "The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Memorandum Opinion, Analysis A,1 quoting cases.

Plaintiff moves this court reconsider the worth of his proofs. They fall into three categories, (a) occupation status of Berlin and Allied supreme authority in Berlin, (b) Kobre's immunity as an Allied Forces Member and (c) Germany's violation of this immunity.

(a) The occupation of Berlin, Allied supreme authority and corresponding lack of German sovereignty in Berlin until 1990 are historical facts for which official state documentation exists. Compl. Nos. 12-24. Plaintiff drew for documentation mainly on official British documentation Documentation of the United States is "Documents on Germany, 1944-1985", United States Department of State Publication 9446; and "Foreign Relations of the United States" (volumes dealing with the wartime and post-war conferences relating to Germany). *See also* historical background of Allied occupation of Germany and Berlin with documentation in judgment *United States v. Tiede and Ruske, Criminal Case Nos. 78-001* and *78-001 A.*

(b) The immunity status of plaintiff's deceased father as a Berlin Allied Forces Member, that is his status as a "certified person" according to Allied Law, No. 2, Art. I(3)(e), is proved in Compl. Nos. 95-105. Kobre's "certification" as an Allied Forces Member by the Commander of Headquarters United States European Command is a photocopy of a copy contained in the criminal court file bearing handwritten note of presiding judge that Kobre submitted original to court during a hearing (of 4 May 1987). The court minutes of the hearing state this submission of Kobre of the original and the photocopying of it by the court in order to attach the photocopy to the files. Compl. No. 98. Proof that this status of immunity persisted until its bearer's death in 1989 is offered Compl. Nos.122 and 129 and consists of official statements of the two highest U.S. government officials in Europe, civil and military, the Chief of the Diplomatic Mission to Germany and the Commander of Headquarters United States European Command (statement of the latter is by an officer (colonel) of Commander's legal department (*See* Executive Order 10608

6

of the President of the United States defining the authority of the two authorities (Compl. No. 132)

(c) The violation of the immunity of the deceased by defendant by assessing him retroactively for thirty years, thereby expropriating him and plaintiff, is proved by court judgments. Compl. Nos. 124-136.

2. Plaintiff learnt meanwhile that certifications should have been performed by US consulate or embassy. Plaintiff will get corresponding US consulate certification as soon as possible and transmit to Clerk of court. As to judgment of criminal suit (Compl.129) which plaintiff possesses only in photocopy the prosecuting attorney's office in Berlin informed him on his inquiry in March that file was being sent out and plaintiff would be informed as soon as it was returned, which has not been done until now. As soon as plaintiff can get the file from the prosecuting attorneys office, copy of criminal judgment certified by US consulate will be submitted.

Translation of German documents into English was performed by Dr. Donald Gutch, native speaker of the English language (British citizen) and retired lecturer in English linguistics at the University of Regensburg. Plaintiff will as soon as possible get them certified by a sworn court translator.

Plaintiffs hereby respectfully moves court specify which facts are not regarded as proven: The occupation of Berlin? Its lasting until 1990? The supreme authority of the U.S. Force during the occupation? Its deriving from the unconditional surrender of Germany? The value of Allied legislation in Berlin? The "Allied status" of the deceased, this status providing immunity? Are only those facts not regarded as proven of which the certification of the documents cannot be acknowledged by the court as not done by U.S. consulate officials? This will be remedied as soon

as possible. Plaintiff moves court pend reconsideration of order until properly certified documentation is submitted.

.   C. United States Sector Commandant's Certificate on the Legal Road

The U.S. Sector Commandant exercised American occupation authority in Berlin, supervising and controlling the activities of the local German organs. In the criminal court in which plaintiff's father was tried for tax evasion for the period from 1957 to 1987 the court asked him for his certificate on the matter, as it was obliged to, according to Allied Kommandatura Law No 7, Art. 3,2 (Compl.No.4) which certificate as the U.S. Sector Commandant's jurisdiction was and still today is "binding on the German Authorities"(same law). The Sector Commandant's certificate is contained in the criminal judgment (1989), and quoted verbatim in No. 129 of Compl. in its English translation, judgment as a whole: Compl. No. 126. The certificate contains an opinion on the legal route that has to be taken in Berlin and contains an opinion on the status of Kobre.

Concerning the legal route the U.S. Sector Commandant said: if an American citizen in Berlin is part of the Allied U.S. Force of Berlin, Allied Kommandatura Law No. 7 has to be applied and no German jurisdiction can be exercised, if he is not, German criminal or civil law applies and German jurisdiction is valid.

Concerning the status of Kobre the Sector Commander said: Kobre was endowed with the status of Member of the Allied Forces of Berlin and was then immune from German jurisdiction, but as his status expired automatically in 1955, German jurisdiction has to be applied now.

In the civil suit plaintiff submitted certificates of U.S. authorities superior to the Berlin U. S. Sector Commandant, authorities under whose direction he had acted in Berlin (Chief of U.S. Mission in Germany and Commander Headquarters U.S.European Command) who both agreed

8

in their official confirmation that Kobre's status had persisted until his death (Compl. Nos. 122 and 129). The certificate of the U.S. Commander on Kobre's status was therefore overruled.

The civil court suppressing this new evidence stated that Kobre's status had expired in 1955, and indicated further that it regarded the status as meaningless, as even if he possessed it, German jurisdiction was valid because of the provisions of NATO SOFA.

But the NATO SOFA was not valid in Berlin, because of Allied supreme authority there. The Allies retained until 1990 in Berlin their supreme authority assumed in *Decl. Defeat Germany*, see Compl. Nos. 16-24, in particular Nos.22 and 23, and did not need agreement with Berlin to be in Berlin. Memorandum of Department of State to United States Judge for Berlin in March 1979:

"A. THE UNITED STATES' AUTHORITY IN BERLIN UNDER INTERNATIONAL LAW IS DERIVED FROM THE RIGHTS OF CONQUEST UNDER THE LAW OF WAR ... As has been noted throughout the Memorandum, Berlin is an occupied city... The United States presence there grows out of conquest, not the consent of the governed ..." Compl. No. 30.

Berlin was not part of the Federal Republic with which the Western Allies had made the NATO SOFA, see quotation from *Quadripartite Agreement*, "these [Berlin] Sectors continue not to be a constituent part of the Federal Republic of Germany and not to be governed by it." With respect to NATO SOFA this means, as West Berlin was not "a constituent part" of the FRG and "not governed" by it, the NATO SOFA signed by the FRG included not West Berlin.

(If this question whether NATO SOFA could not be applied to occupied Berlin should not be clear, Plaintiff moves court inform him and grant permission to get the expert opinion of a renowned specialist to submit to the court.)

The U.S. Sector Commandant's certificate on the legal route in the matter exists and is binding jurisdiction on all German Authorities (Allied Kommandatura Law No. 7, Art. 3,2). It states that the Allied status is of essential importance, it is the turning point: if you possess it, you are within

the application of Allied Kommandatura Law No 7 and no German jurisdiction can ever be exercised. There is no other legal route. Anything but Allied Kommandatura Law No 7, that is jurisdiction reserved exclusively to the Allies, is out.

As plaintiff proved the validity of the Allied status of his father until he died (U.S. consulate certification of pertinent documents will be submitted as soon as possible), no German jurisdiction was or is valid in the matter. The Sector Commandant's binding jurisdiction is clear: No German jurisdiction on an Allied Forces Member, only Allied Kommandatura Law No 7 may be applied when an Allied Forces Member is concerned and Allied Kommandatura Law No. 7 means only Allied jurisdiction is given. And: As an Allied Forces Member Kobre is ours, within our own jurisdiction, outside any German jurisdiction".

This Sector Commandant's jurisdiction on the legal route for this very case can as such not be suppressed. It has absolute precedence and is "binding on the German authorities" (Allied Kommandantura Law No 7, Art. 3,2). To ask reunited Germany to observe a binding jurisdiction as to which legal route to follow in this case, which binding certificate has been there since 1989 is not depriving reunited Germany of a right it had when it acted.

Where there is no German jurisdiction, there is no German sovereignty. The route for U.S. subject-matter jurisdiction is open. Allied Kommandatura Law No 7 together with the jurisdiction of the U. S. Sector Commandant on the legal route in the matter plus the official statements of the Chief of the US Mission in Germany and the Commander of Headquarters U. S. European Command on the status of Kobre, leave here only U.S. jurisdiction. German jurisdiction is not given and German sovereignty does not have to be assumed in this matter, also because of this jurisdiction of the Sector Commandant concerning the only legal route that has to be taken in this case. In occupied regions the decision of the occupier prevails, this is

international law. It may be reminded that even defendant takes U.S. subject-matter jurisdiction for granted.

### D. Defendant's Motion

Should dismissal for lack of subject matter-jurisdiction require corresponding motion as text of Memorandum opinion, III., A., 1 seems to suggest ("On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Memorandum Opinion, Analysis A.1.) plaintiff moves this court consider that corresponding motion is missing. Defendant had moved dismiss pursuant to

1. Fed.R.Civ.P. 12 (b)(5) for lack of proper service of process pursuant to 28 U.S.C.1608 of the Foreign Sovereign Immunities Act ("FSIA") and
2. Fed.R.Civ.P.12(b)(2) for lack of personal jurisdiction resulting from this lack of proper service. Def.'s Mot. at 1.

Respectfully submitted,

*Harold Gutch*

Harold Gutch
Isarstrasse 66
93057 Regensburg
Germany

**CERTIFICATE OF SERVICE**

I certify that the plaintiff's above motion was served by First Class German Mail, postage, postage prepaid, on 10 Aug 2006 to defendant attorneys:

/s/ Jeffrey Harris
Jeffrey Harris, Esq., Bar # 925545
RUBIN, WINSTON, DIERCKS, HARRIS & COOKE,LLP
Sixth Floor, 1155 Connecticut Avenue, N.W.
Washington, D.C. 20036
U.S.A

*Harold Gutch*

11